IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT

| | | |
|---|---|---|
| LAVONCE BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-cv-05437 |
| | ) | |
| BIOMAT USA, INC., | ) | Judge Mary M. Rowland |
| | ) | |
| Defendant. | ) | |

## AMENDED COMPLAINT

The Plaintiff LAVONCE BROWN (hereinafter referred to as "BROWN") and for his amended complaint against the Defendant BIOMAT USA, INC. (hereinafter referred to as "BIOMAT"), states:

## COUNT I –
### Violation of the Illinois Whistleblower Act 740 ILCS 174/1 et. seq.

1. At all times relevant hereto, BROWN was and is a citizen of the United States and a resident of the Northern District of Illinois.

2. At all times relevant hereto, BIOMAT was a corporation organized and existing under the laws of the State of Delaware with its principal place in California.

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 since there is complete diversity between BROWN and BIOMAT and the amount in controversy is in excess of $75,000.00.

4. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 since a portion of this incident arose in this District.

1

5. On or about January 20, 2015, BROWN was hired by BIOMAT to the position of Donor Processor.

6. In December, 2017, BROWN was promoted to the position of Lead Donor Center Technician.

7. On or about December 30, 2018, BROWN was promoted by BIOMAT to the position of Operational Supervisor.

8. As Operational Supervisor, BROWN was responsible for controlling donor flow throughout the center, making sure that all areas of production were running smoothly and in accordance with safety standards, making schedules for employees and taking care of reactive units.

9. Up to March, 2020, BROWN received excellent performance reviews and commendations from various individuals at BIOMAT.

10. In late 2019, an outbreak of Coronavirus disease (hereinafter referred to as "COVID-19") emerged in China.

11. COVID-19 is a severe acute respiratory illness that can spreads through respiratory transmission.

12. On January 27, 2020, the United States Secretary of Health and Human Services declared COVID-19 a public health emergency.

13. On or about March 9, 2020, Governor J.B. Pritzker of the State of Illinois issued a Disaster Proclamation finding that a disaster existed within the meaning of Section 7 of the Illinois Emergency Management Agency Act, 20 ILCS 3305/7 and declared all counties in the State of Illinois a disaster area by virtue of the COVID-19

pandemic. A true and correct copy of Governor Pritzker's proclamation is attached hereto as *Exhibit A*.

14. The Illinois Department of Public Health was then directed to work with Governor Pritzker and other state agencies and local authorities to develop strategies and plans to protect the public health in connection with the COVID-19 pandemic.

15. On March 20, 2020, Governor Pritzker issued Executive Order 2020-10 in which he set forth certain concerning social distancing requirements and orders for essential businesses and operations which, among other things, requiring people to stay at least six feet away from any other person, ceasing non-essential business and operations and prohibiting public and private gatherings of any number of people occurring outside a single household or living unit. A true and correct copy of this Executive Order is attached hereto as *Exhibit B*.

16. On or about March 30, 2020, BROWN contacted the Federal Food and Drug Administration (hereinafter referred to as the "FDA") and advised the FDA that the BIOMAT center where he worked was not adhering to the COVID-19 requirements delineated in Governor Pritzker's Executive Order.

17. Specifically, BROWN indicated that BIOMAT was allowing too many people in the building without social distancing and that it did not reduce the total number of seats in the lobby to the equivalent spacing of one donor seat, two empty seats and one donor seat per row so as to maintain the social distancing requirements.

18. He further indicated that BIOMAT did not establish a process to insure that a maximum number of donors in the lobby did not exceed the number of seats available based on the above described seating requirements.

19. BROWN also related that BIOMAT did not limit the total number of donors that were present in the center at any one time to be managed via an already in place electronic appointment system, manual appointment system or other system designed by the business unit operations team.

20. In or about early April, 2020, BROWN advised BIOMAT that he had relayed BIOMAT's failure to abide by Governor Pritzker's Executive Order concerning COVID-19 mitigation steps to the FDA.

21. Following this conversation, various individuals at BIOMAT became extremely hostile toward BROWN.

22. On or about April 23, 2020, BROWN was suspended by BIOMAT for allegedly blocking off appointments in BIOMAT's appointment system.

23. BROWN never blocked off any appointments in BIOMAT's appointment system.

24. In fact, he was not responsible and had no authority to schedule appointments or block them out.

25. Moreover, on April 30, 2020, Sandra Smiley, Center Manager, contacted BROWN by telephone and advised him that he had been terminated by BIOMAT.

26. At the time that Ms. Smiley spoke to BROWN, she knew that BROWN had previously spoken to the FDA.

27. As a direct and proximate result of BROWN reporting BIOMAT's failure to comport with Governor Pritzker's Executive Order regarding COVID-19 mitigation steps, BROWN was terminated from his position in direct violation of Section 20 of the Illinois Whistleblower Act.

WHEREFORE the Plaintiff LAVONCE BROWN requests that this Court enter judgment in his favor and against the Defendant BIOMAT USA, INC. as follows:

    a. Reinstating him with the same seniority status that he would have had but for the Defendant's violation of the Illinois Whistleblower Act;

    b. Awarding him backpay with interest;

    c. Awarding him costs, including expert witness fees and reasonable attorney's fees pursuant to Section 30 of the Illinois Whistleblower Act; and

    d. Awarding him such other relief as this Court may deem appropriate.

THE PLAINTIFF REQUESTS TRIAL BY JURY.

## COUNT II –
### Retaliatory Discharge

1-13. BROWN repeats, realleges and incorporates by reference paragraphs 1 through 13 of Count I as paragraphs 1 through 13 of Count II.

14. At all times relevant hereto and pursuant to Governor Pritzker's Executive Orders, it was the policy of the State of Illinois to protect its citizens from the COVID-19 virus whether the citizens were at work or at home.

15-25. BROWN repeats, realleges and incorporates by reference paragraphs 14 through 24 of Count I as paragraphs 15 through 25 of Count II.

26. As a direct and proximate result of BROWN advising the FDA of BIOMAT's failure to follow Governor Pritzker's Executive Order, BIOMAT retaliated against BROWN and terminated him on April 30, 2020.

WHEREFORE the Plaintiff LAVONCE BROWN requests that this Court enter judgment in his favor and against the Defendant BIOMAT USA, INC. as follows:

    a.    Awarding him compensatory damages in the amount in excess of $50,000;

    b.    Awarding him punitive damages in an amount to be proven at trial; and

    c.    Awarding him costs and such other relief as this Court may deem appropriate.

THE PLAINTIFF REQUESTS TRIAL BY JURY.

Respectfully submitted,

_____
JOEL F. HANDLER (#1115812)
One E. Wacker Drive, Suite 510
Chicago, Illinois 60601
(312) 832-0008
jhandler@handlerlawgroup.com
Attorney for the Plaintiff,
LAVONCE BROWN